# U.S. BANKRUPTCY COURT
## District of South Carolina

Case Number: **21-01878-jw**

# ORDER

The relief set forth on the following pages, for a total of 12 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**01/14/2022**



*signature*

US Bankruptcy Judge
District of South Carolina

Entered: 01/14/2022

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| In re,<br><br>Emilia O. Marion,<br><br>                                       Debtor. | C/A No. 21-01878-JW<br><br>Chapter 13 |
|---|---|

### ORDER OVERRULING OBJECTION TO CONFIRMATION

This matter comes before the Court upon an Objection to Confirmation filed by Edward Marion ("Creditor"). Through the Objection, Creditor asks the Court to deny confirmation of a proposed Chapter 13 plan of reorganization filed by Emilia O. Marion ("Debtor"). According to Creditor, Debtor's treatment of his claim is improper under the Bankruptcy Code and precludes confirmation due to Debtor's lack of good faith in filing her bankruptcy case. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A). Based on materials presented by the parties, the Court makes the following findings of facts and conclusions of law.

### FINDINGS OF FACT

On June 12, 2003, Debtor married Creditor. During the marriage, Debtor and Creditor acquired one parcel of commercial real property at 3612 North Main Street, Columbia, S.C. 29201 ("North Main Street") and another parcel at 3009 Park Street, Columbia, S.C. 29201 ("Park Street"). Around August 15, 2017, Debtor and Creditor separated, and they never reconciled or resumed living together. On February 20, 2018, Debtor filed divorce proceedings in state court. During the divorce proceedings, the parties entered into a Mediation Agreement, on August 22, 2019, to resolve disputes over their marital property.

Under the Mediation Agreement, Debtor and Creditor waived alimony. They also agreed that each party would be responsible for debts in their name. With respect to North Main Street, Creditor agreed to convey all his interest in North Main Street to Debtor and pay the note and mortgage encumbering it ("North Main Street Mortgage") for twelve months after state court approval of the Mediation Agreement, and Debtor agreed to take steps to remove Creditor from the North Main Street Mortgage as follows:

> 4. Husband will sign a quit-claim deed to the Wife transferring the North Main Street property.
>
> Husband will pay all mortgage payments on North Main Street property for a period of twelve (12) months commencing the first (1st) day of the month after approval of this agreement. At the conclusion of the twelve (12) months, the Husband must be relieved of all legal obligations as to this property and be relieved of any obligations on note and mortgage. If the Husband is not relieved, the property is to be sold by a realtor to be appointed by the Court at price set by realtor. The Wife must accept any offer recommended by the realtor. All net proceeds shall be split between Husband and Wife. Husband shall make the mortgage payments until the sale of the property and will be reimbursed for principal reduction at the time of the sale.
>
> If Husband has been relieved of obligations on note and mortgage by or before the twelve (12) months from the date of the approval of this agreement, he forfeits any interest in property and Wife receives 100% of interest in such.

Debtor and Creditor made a somewhat similar arrangement for Park Street.[1] On September 13, 2019, the state court entered a divorce decree ("Final Decree") that approved the parties' Mediation Agreement and incorporated its terms.

---

[1] According to the parties, Park Street was sold pursuant to the terms of the Final Decree. The sale generated net proceeds of $89,880.06. After application of the sales proceeds to mortgages encumbering North Main Street, $48,752.69 remained. From this amount, Creditor's counsel in the divorce proceedings set aside $16,752.69 of the sales proceeds to reimburse Creditor for principal that he paid as required by the Final Decree and to pay attorney's fees and costs, which need to be approved by the state court. Creditor's counsel also paid Creditor $16,000 of the sales proceeds, which left $16,000 for distribution to Debtor. To date, Debtor waived her rights to any remaining sales proceeds, which are currently being held in escrow by the settlement agent for the sale of Park Street pending an order from this Court setting forth distribution of those proceeds.

Creditor quit claimed title to North Main Street to Debtor prepetition, but Debtor failed to successfully have Creditor removed from the North Main Street Mortgage within the twelve-month period prescribed by the Final Decree. Debtor ultimately fulfilled her obligation to remove Creditor from the North Main Street Mortgage *more than* twelve months after entry of the Final Decree. Nevertheless, pursuant to the terms of the Final Decree, the state court appointed a realtor to sell North Main Street by an order ("Sale Order") entered on June 23, 2021. Debtor filed her Chapter 13 reorganization on July 20, 2021, before North Main Street was sold.

Under the Debtor's proposed Chapter 13 plan ("Initial Plan")—which she filed and served upon Creditor by first class U.S. Mail on August 4, 2021—Debtor treats her obligations to Creditor under the Final Decree and Sale Order as a secured claim arising from the equitable distribution provided to Creditor under the Final Decree in the amount of $22,230.00 to be paid in monthly installments of $373.00 during the plan's applicable commitment period. Before the claim bar deadline, Creditor filed a proof of claim on September 27, 2021, to assert a secured claim in the amount of $91,155.00 arising from Debtor's obligation to sell North Main Street and divide the sales proceeds with Creditor under the Sale Order as a result of Debtor's failure to timely remove Creditor from the North Main Street Mortgage. According to Creditor's secured proof of claim, Debtor defaulted on her obligation to remove Creditor from the North Main Street Mortgage in a timely manner and owed Creditor the following:

- $74,000.00 for Creditor's 50% in North Main Street, which Creditor believes is worth $148,800.00;[2]
- $11,000 for Creditor's payment of principal for the North Main Street Mortgage; and
- $5,755 in attorney's fees and costs.

---

[2] Creditor valued North Main Street pursuant to an estimated appraised value provided by Zillow.

Despite receiving actual notice of Debtor's Initial Plan, however, Creditor never filed a timely objection to that plan.

Debtor subsequently filed amended plans on November 9, 2021, and on November 12, 2021, but never changed the treatment of the claim owed to Creditor under the Final Decree or Sale Order in any of her amended plans. On November 4, 2021, five days before the continued confirmation hearing for Debtor's Initial Plan, Creditor withdrew his proof of claim, which had been the subject of Debtor's objection. The day before the November 9, 2021, confirmation hearing for the Initial Plan and upon inquiry by the Court, Creditor advised the Court that he had no objection to confirmation. Based on the Trustee's continued objection that payment under the plan needed to be increased, Debtor filed amended plans on November 9, 2021, and November 12, 2021. Almost three weeks later, Debtor filed a secured claim on Creditor's behalf in the amount of $22,320.00.

On November 30, 2021, Creditor timely objected to Debtor's most recent plan filed on November 12, 2021. In his objection, Creditor argued that Debtor's plan was not filed in good faith and is an improper attempt to circumvent the requirements of the Final Decree and Sale Order. Critically, in his objection, Creditor claims an equitable interest in the North Main Street Property under the Final Decree and Sale Order because he is entitled to 50% of any proceeds generated by the sale of North Main Street. Creditor further argues that because of the Final Decree and Sale Order, North Main Street is not property of Debtor's bankruptcy estate. A week after filing the objection to confirmation, Creditor also filed a Motion for Relief from Stay on December 6, 2021. In the Motion for Relief, Creditor reiterated that Debtor's proposed treatment of her obligation to sell North Main Street and divide the proceeds under the Final Decree and Sale Order were improper attempts to modify a court ordered "division of marital property" in violation of S.C.

Code Ann. § 20-3-620(C) and this Court's decision in *Simpson Farms, LLC*, C/A No. 15-05951-jw, slip op. (Bankr. D.S.C. Jan. 29, 2016).

Debtor filed timely responses to the objection to confirmation and Motion for Relief to argue that Debtor's treatment of the claim was proper, and that Creditor is bound to the treatment provided in the initial plan and subsequent amended plans because Creditor is deemed to have accepted Debtor's treatment pursuant to 11 U.S.C. §§ 1325(a)(5) and 1323(c).  The parties repeated their positions at the confirmation hearing held on December 16, 2021. During the hearing, Debtor also argued that she filed her bankruptcy in good faith to cure her default under the Final Decree, which arose from her untimely removal of Creditor from the North Main Street Mortgage.  Finally, Debtor's counsel confirmed that North Main Street was only titled in Debtor's name, and that Debtor resides at North Main Street. [3]

## CONCLUSIONS OF LAW

While Debtor bears the ultimate burden of demonstrating that the plan meets the requirements for confirmation under § 1325(a), "it is generally accepted that a party objecting to confirmation bears the burden of proof" of going forward with evidence as to its objection. *In re Krueger,* 457 B.R. 465, 475 (Bankr. D.S.C. 2011) (quoting *Matter of Shortridge,* No. 93-2558, 1995 WL 518870, at *2 (6th Cir. 1995)). Accordingly, there is a shifting burden of proof.  Initially, Creditor bears the burden of establishing a prima facie objection that Debtor lacked good faith in filing the petition under § 1325(a)(7). *In re Pizzo,* No. 20-01758, 2021 WL 2020297 (Bankr. D.S.C. May 20, 2021). If Creditor meets this burden, then Debtor bears the ultimate burden to prove that her plan complies with the requirements for confirmation. *See In re Barnes,* 378 B.R. 774, 777 (Bankr. D.S.C. 2007); *In re Williams,* C/A No. 97-08824-W, slip op. 1998 WL 2016786

---

[3]     On these points, Creditor's counsel did not present any evidence to the contrary.

(Bankr. D.S.C. Jan. 13, 1998) (noting that a debtor bears the ultimate burden of proof for confirmation of a chapter 13 plan).

### I. Debtor filed her petition in good faith and satisfied 11 U.S.C. § 1325(a)(7).

Section 1325(a)(7) of the Bankruptcy Code requires Debtor to show that her bankruptcy petition filing was in good faith to meet the requirements for confirmation. Creditor alleges that Debtor did not file her Chapter 13 reorganization in good faith because she is attempting to amend a property settlement agreement with the Creditor that was incorporated into the Final Decree and further to be enforced by the entry of the prepetition Sale Order. The Bankruptcy Code, however, provides otherwise by permitting Debtor to pursue discharge of her property settlement agreement obligations through a confirmed Chapter 13 plan.

Although Creditor filed and then withdrew a secured claim for amounts owed by Debtor under the Final Decree, the Court concludes that Creditor's proper status in this bankruptcy case would be as a holder of a secured claim against Debtor's estate arising from the provisions of the Final Decree. Whether Creditor's rights under the Final Decree give rise to a "claim" subject to treatment under Debtor's proposed plan of reorganization is an issue of statutory construction resolved by reference to the "text, history, and purpose of the Bankruptcy Code." *Johnson v. Home State* Bank, 501 U.S. 78, 83 (1991). Under the Bankruptcy Code, the term "claim" can mean either:

**(A)** right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

**(B)** right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5)(A)-(B). Congress used the language in § 101(5)(A)-(B) "to adopt the broadest available definition of 'claim.'" *Johnson v. Homestate Bank,* 501 U.S. at 83. Indeed, the phrase

"'right to payment' means nothing more nor less than an enforceable obligation…." *Id.* (quoting *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 559 (1990)).

Applying the provisions of § 101(5) and the Supreme Court's interpretation of that Bankruptcy Code provision, Debtor's obligations under the Final Decree give rise to a claim of Creditor that may be addressed in Debtor's Chapter 13 plan. The provisions of the Final Decree provide Creditor with a "right to payment" arising from Debtor's breach of her obligation to remove Creditor from the North Main Street Mortgage within a specified period. Upon Debtor's default and the remedy provided by the Final Decree, Creditor has a "right to payment" equivalent to Creditor's share of any proceeds generated from the sale of North Main Street as prescribed by the Final Decree. Moreover, the forced sale of North Main Street provided by the Final Decree can reasonably be viewed as a "right to an equitable remedy." Under the circumstances, Creditor holds a claim against Debtor under the provisions of the Final Decree. *Cf. Johnson v. Home State Bank,* 501 U.S. at 84 (concluding that foreclosure and sale rights in mortgage that survived discharge constituted a "claim" under § 101(5)(A) & (B)).

While in the context of a Chapter 13 case, domestic support obligations are entitled to priority treatment pursuant to 11 U.S.C. § 507(a)(1)(A), other types of debts incurred by a debtor during a divorce proceeding, including obligations imposed by property settlements, are dischargeable in bankruptcy and may be treated in a Chapter 13 plan of reorganization. *In re Fickling,* No. 12-02719-JW, slip op. at 16 (Bankr. D.S.C. Oct. 2, 2012) (holding that business buyout payments required by property settlement agreement could be treated as an unsecured claim and discharged in debtor's confirmed Chapter 13 plan).

Federal bankruptcy law governs the determination of whether a debt is in the nature of alimony, maintenance, or support that must be characterized as a non-dischargeable domestic

support obligation. *In the Matter of Long*, 794 F.2d 928, 930 (4th Cir. 1986) ("The parties correctly conclude that the determination of whether alimony is for the recipient's maintenance and support for purposes of bankruptcy discharge ability is a matter of federal, not state, law."). Here, it is undisputed that all obligations imposed by the Final Decree and Sale Order are in the nature of a property settlement arrangement instead of a non-dischargeable domestic support obligation.[4]

A review of the Final Decree indicates that Debtor was to immediately receive title to North Main Street with the obligation to relieve Creditor of any payment obligation for the North Main Street Mortgage. In the event of Debtor's failure to timely terminate Creditor's obligations under the mortgage, then North Main Street was to be sold and the sales proceeds would be divided between Debtor and Creditor. The Court agrees with Debtor that the sale would only occur as a means of enforcing the division of marital property between the parties.[5]

To this end, on the petition date, Debtor remains the owner of fee simple title to North Main Street and is entitled to reorganize her obligation to pay Creditor for her breach of the Final Decree through her Chapter 13 plan. Under these circumstances, the Court concludes that Debtor filed her Chapter 13 petition in good faith as required by 11 U.S.C. § 1327(a)(7).

---

[4] Creditor concedes that obligations related to North Main Street under the Mediation Agreement are property settlement arrangements in its Motion for Relief from Stay by admitting that "[t]he Divorce Decree effected a division of marital property" and that "[o]wnership of the North Main Street property was subject to the equitable division ordered by the Family Court." ECF No. 40, Creditor. Mot. for Relief at 6. Nothing in the language adopted by the Creditor in his Motion for Relief supports any basis that any obligation imposed by the parties' Mediation Agreement as approved and enforced by the state court is in the nature of a non-dischargeable domestic support obligation.

[5] The sale of North Main Street arising from Debtor's default on her obligations under the Final Decree is analogous to cases involving foreclosure of a mortgage where a borrower's non-compliance with obligations imposed by a promissory note and mortgage, trigger the lender's right to sell the collateral and collect a remedy from any sales proceeds. Here, the sale procedures for North Main Street provided by the Final Decree are much like a state court foreclosure action in which a foreclosure judgment has been entered but a final sale of the collateral has not been completed.

## II. North Main Street is property of Debtor's bankruptcy estate.

In his objection to confirmation and Motion for Relief, Creditor contends that he holds an equitable interest in North Main Street that entitles him to sell it under the Final Decree and Sale Order and collect a portion of any sales proceeds. In support of his position, Creditor cites to *In re Simpson Farms, LLC*, C/A No. 15-05951-JW, slip op. (Bankr. D.S.C. Jan. 29, 2016). A close reading of *Simpson Farms*, however, reveals that it is inapposite to this matter and stands for the proposition that under the terms of the Final Decree, Creditor's equitable interest in North Main Street was transferred to Debtor prepetition. *See, e.g., In re Simpson Farms, LLC*, C/A No. 15-05951-JW, slip op. at 7 (recognizing that final divorce decree requiring conveyance of properties effected a transfer of equitable interests in properties when the decree was entered).[6]

Furthermore, the Court accepts Debtor's argument that Creditor's proper status in this case is as a secured creditor owed 50% of the value of North Main Street plus repayment of principal that Creditor paid for the North Main Street Mortgage as required by the Final Decree. Despite receiving actual notice of Debtor's treatment in the Initial Plan, Creditor never timely objected to Debtor's Initial Plan on or before August 25, 2021. Before the second continued confirmation hearing for the Initial Plan, Creditor withdrew his claim[7] but further expressly indicated that he had no objection to confirmation of the Initial Plan, which provided for Creditor's interest in North

---

[6] In *Simpson Farms*, the Court addressed a creditor's motion for relief from stay on the grounds that prepetition conveyances of real property by a corporate debtor under a prepetition divorce decree precluded those parcels of real property from being a part of the debtor's bankruptcy estate. In its analysis, the Court in *Simpson Farms* held that pursuant to the prepetition final decree of divorce, a corporate debtor and related principals effectively conveyed various parcels of land from the debtor to a creditor prepetition, and thus, the prepetition conveyances prevented those parcels from being included in the corporate debtor's bankruptcy estate—even though the corporate debtor never executed any conveying deeds prepetition or post-petition. *Id.* at 9. But the prepetition conveyances by a bankrupt debtor in *Simpson Farms* did not occur in this case. Instead, Creditor conveyed all his interest in North Main Street to Debtor under the Final Decree.

[7] The withdrawal of the previously filed secured claim does not affect the application of 11 U.S.C. § 1323(c) and 11 U.S.C. § 1325(a)(5).

Main Street. Moreover, Debtor's treatment of Creditor's claim remained unchanged from the Initial Plan to her latest plan filed on November 12, 2021. As the Court has found that Creditor's status in this case is that of a secured creditor, Creditor's strategic withdrawal of his claim does not preclude application of 11 U.S.C. §§ 1323(c) and 1325(a)(5) to bind Creditor to Debtor's treatment of his claim in her plan.

## CONCLUSION

The Final Decree, which incorporates the terms of the parties' Mediation Agreement, provides for the conveyance of Creditor's interests in North Main Street to Debtor by requiring Creditor to "sign a quit-claim deed to the [Debtor-]Wife transferring the North Main Street property." Pursuant to *Simpson,* the transfer of North Main Street from Creditor to Debtor became effective upon entry of the Final Decree prepetition. *See* C/A No. 15-05951-JW, slip op. at 9 (holding that conveyances of real property in divorce decree conclusively determined ownership of real properties in dispute). Moreover, the Sale Order does not expressly grant any interest in North Main Street to Creditor. Instead, the Sale Order merely compels the sale of North Main Street and distribution of a portion of the sales proceeds to Creditor as a remedy for Debtor's non-compliance with the requirement to timely remove Creditor from the North Main Street Mortgage. Furthermore, during the hearing for Creditor's objection to confirmation, Debtor's counsel confirmed that North Main Street was only titled in Debtor's name and that Debtor resided at North Main Street. Under these circumstances, North Main Street is a part of Debtor's bankruptcy estate, and Creditor's interest related to it may be treated as a monetary claim in Debtor's bankruptcy case.

Based on the foregoing, the Court hereby **OVERRULES** Creditor's objection to confirmation.[8] The Trustee may submit a proposed order confirming the plan.[9]

**AND IT IS SO ORDERED.**

---

[8] Based on the stipulation of counsel at the hearing, Creditor is being paid $16,000, which is Debtor's share of the proceeds generated by the sale of Park Street.

[9] During the confirmation hearing, the Chapter 13 Trustee also noted that Debtor's plan is confirmable if Creditor's objection to confirmation is overruled.